UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHAUNA BROWN,

    *Plaintiff,*

v.

ANDREW M. SAUL,[1]
Commissioner of Social Security,
    *Defendant.*

Civil Action No. 18-1294-RCL

## MEMORANDUM OPINION

Plaintiff Shauna Brown brings this action challenging a Social Security Administration determination that she is ineligible for disability insurance benefits or supplemental security income because she is not disabled under the Social Security Act, 42 U.S.C. § 401 *et seq.* Before the Court are plaintiff's Motion for Judgment of Reversal, ECF No. 12, and defendant Andrew M. Saul's Motion for Judgment of Affirmance, ECF No. 13. After considering the motions and the entire record, the Court will deny plaintiff's motion and grant defendant's motion for the reasons below.

### I.    BACKGROUND

Through an adjudicatory process, the Social Security Administration provides benefits to individuals who cannot work because of a physical or mental disability. On May 3, 2016, plaintiff protectively filed an application with the Social Security Administration for disability insurance benefits and supplemental security income for an alleged disability that began on November 1, 2015. Soc. Sec. Admin. Op. 1, ECF No. 8-2. These claims were initially denied on October 13, 2016, and upon reconsideration on March 22, 2017. *Id.* Plaintiff subsequently filed a request for a

---

[1] Andrew M. Saul, Commissioner of Social Security, is substituted for Nancy A. Berryhill, his predecessor. *See* Fed. R. Civ. P. 25(d).

1

hearing, which was held on January 8, 2018, in front of the Honorable Susan Maley, an Administrative Law Judge ("ALJ"). *Id.*

At the hearing plaintiff appeared and testified in person. *Id.* At the time of the hearing, plaintiff was thirty-two years old and had a high school education. Tr. 4, ECF No. 8-2. She had not worked for two or three years, and last worked at a clothing store and as a dietary aide at a nursing home. Tr. 5. While plaintiff had spent almost two years living in homeless shelters, in 2017 she moved into her own home with her nine-year-old daughter and four-year-old son. Tr. 6. Plaintiff testified that she cooks for her children, but that they often miss or are late to school because she frequently lacks the energy to get out of bed; plaintiff also stated that her depression and anxiety got worse after her son was born in 2013. Tr. 6, 8. When she does take her children to school, and picks them up, plaintiff takes two buses. Tr. 7, 12. She reported that she suffers from anxiety "[a]lmost every day" and also gets panic attacks "every other day." Tr. 11, 13. Plaintiff also described herself as antisocial, and sometimes heard voices calling her name until she started taking medication. Tr. 13, 14. When asked why she is unable to work, plaintiff pointed to her anxiety, inability to concentrate, and pain from her diabetes. Tr. 15–18.

Ms. Theresa M. Kopitzke, an impartial vocational expert, also testified by telephone. Tr. 25. The ALJ gave Ms. Kopitzke two hypothetical individuals and asked her whether there would be any jobs either individual could perform in the national economy. *Id.* The first was an individual with a medium exertional capacity that could carry out simple tasks in two-hour increments with fifteen-minute breaks in between, have occasional interaction with coworkers and supervisors but no direct interaction with the general public, and be able to adapt to simple changes in a routine work setting. *Id.* Assuming the individual would be able to stay on task ninety percent of the time, Ms. Kopitzke testified that the individual could work in the national economy as an industrial

cleaner, kitchen helper, hospital cleaner, or in similar jobs. Tr. 28, 29. The second individual would be able to remain on task only eighty percent of the time, and here Ms. Kopitzke stated that there would be no jobs that the individual could perform given that off-task behavior. Tr. 28.

On January 31, 2018, the ALJ issued her decision denying plaintiff's disability insurance benefits and supplemental security income claims. Op. 1. The ALJ found that plaintiff had not engaged in substantial gainful activity since November 1, 2015, that she had the severe impairments of diabetes, obesity, affective disorder, and anxiety disorder, and that those severe impairments did not equal or exceed the criteria of an impairment listed in 20 C.F.R. Part 404, subpart P, Appendix 1. Op. 3. The ALJ then considered plaintiff's residual functional capacity ("RFC") and found that plaintiff was not disabled because she could perform medium work, subject to the limitations of the first hypothetical individual discussed at the hearing. Op. 7. After unsuccessfully seeking review by the agency's Appeals Council, plaintiff timely filed this suit under 42 U.S.C. § 405(g).

## II.   LEGAL STANDARD

Our review of the ALJ's decision is limited to deciding whether the ALJ correctly applied the relevant legal standards and whether substantial evidence supports the ALJ's findings. *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004). The substantial evidence standard "requires more than a scintilla, but . . . less than a preponderance of the evidence," *id.* (internal quotation marks omitted), and can be satisfied by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).

To qualify for disability insurance benefits and supplemental security income under the Social Security Act, plaintiff must establish that she is "disabled." 42 U.S.C. §§ 423(a)(1)(E),

1382(a)(1). The Social Security Administration has established a five-step sequential evaluation process for assessing whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The first three steps involve, respectively, the ALJ considering whether the individual is currently doing "substantial gainful activity," whether the medical impairment is "severe," and whether the severe medical impairment meets one of the "listings" in the relevant subpart appendix. §§ 404.1520(a)(4)(i)–(iii), 416.920(a)(4)(i)–(iii). If the severe medical impairment is not a listed impairment under the third step, the ALJ then assesses the individual's RFC before moving on to the fourth step. §§ 404.1520(a)(4), (e), 416.920(a)(4), (e). An individual's RFC is the most she can still do despite her limitations and is assessed based on all the relevant evidence in the record. § 416.945(a)(1). If the ALJ finds that the individual can adjust to other work based on her age, education, and the RFC assessment, she is not disabled under the Social Security Act. §§ 404.1520(h), 416.920(h).

### III.   DISCUSSION

At issue is the ALJ's finding regarding plaintiff's RFC. Specifically, plaintiff claims that the ALJ did not provide an adequate explanation to support her RFC findings regarding plaintiff's mental limitations and that the ALJ failed to include any limitation on concentration, task persistence, or pace in plaintiff's RFC. Pl.'s Mot. J. Reversal 5–6, 9, ECF No. 12. The Court finds plaintiff's arguments unpersuasive and affirms.

#### A. The ALJ Adequately Supported Her Findings Regarding Plaintiff's Mental Limitations

Plaintiff argues that the ALJ did not provide the required "narrative discussion" when she found that plaintiff was capable of carrying out simple tasks in two-hour increments with fifteen-minute breaks in between, having occasional interaction with coworkers and supervisors but no direct interaction with the general public, and being able to adapt to simple changes in a routine

4

work setting. Pl.'s Mot. J. Reversal 6. An ALJ's conclusions in the RFC assessment "must contain a 'narrative discussion' identifying the evidence that supports each conclusion." *Butler*, 353 F.3d at 1000. A narrative discussion should contain "specific medical facts . . . and nonmedical evidence." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (internal quotation marks omitted).

The Court holds that the ALJ included sufficient information to satisfy the narrative discussion requirement of the RFC assessment. In her opinion the ALJ states that, in making her RFC findings, she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," Op. 7, before spending approximately five pages detailing her findings on plaintiff's impairments.[2] Half of the ALJ's analysis is dedicated to plaintiff's mental impairments, which is what her RFC limitations for plaintiff are based on.

For example, the ALJ found that plaintiff could do simple tasks in two-hour increments with fifteen-minute breaks in between. The ALJ supported this limitation when she cited to doctors describing plaintiff's mental impairments, on the one hand, as "affect[ing] her memory and ability to complete tasks, understand and follow instructions," and that her concentration was "intermittently low," but also that plaintiff had average intelligence and "goal-directed thoughts." Op. 5, 6. The ALJ supported her finding that plaintiff could have occasional interaction with colleagues but not the general public by referencing plaintiff's self-reported ability to "get along with authority figures without problems," Ex. 5E 12, ECF No. 8-6, and the fact that when she was examined by doctors she "frequently presented with normal and appropriate speech," despite also being diagnosed as sometimes having an angry, anxious, and depressed mood, Op. 5. As for the

---

[2] The ALJ also referred to her analysis under step three, whether a severe impairment meets the "listed" criteria, in her description of plaintiff's RFC. Op. 11.

ALJ's finding that plaintiff can adapt to simple changes in a routine work setting, the ALJ balanced plaintiff's self-reported inability to handle stress or changes in routine well with the fact that plaintiff can use public transportation and leaves her house independently, Op. 6, and that a doctor who examined plaintiff after she had been in a car crash in May 2016 noted she was "in no apparent distress" and that her speech, mood, and affect were "within normal limits," Ex. 15F 4, ECF No. 8-8.

While the ALJ does not tie each limitation to a specific finding in her decision, "it is a logical conclusion to draw, based on the entire record," that the ALJ weighed plaintiff's mental impairments described above in reaching her conclusions on plaintiff's limitations. *Thomas v. Astrue*, 677 F. Supp. 2d 300, 306 (D.D.C. 2010). Given her lengthy findings regarding plaintiff's mental limitations, the ALJ did not need to repeat herself. *See Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits us to glean the rationale of an ALJ's decision.") (internal quotation marks omitted).[3] Thus, the ALJ provided adequate explanations to support the limitations she assessed.

## B. The ALJ Limited Plaintiff's Concentration, Task Persistence, and Pace in Work Settings When She Restricted Plaintiff to Two-Hour Increments with Fifteen-Minute Breaks and Simple Changes in Work Settings

Plaintiff also argues that the ALJ's decision "failed to include any limitation on concentration, task persistence, or pace in her [RFC] assessment." Pl.'s Mot. J. Reversal 9. The Court disagrees.

---

[3] Even assuming the ALJ did not lay out a "narrative discussion" tied to each of plaintiff's limitations the ALJ identified as part of her RFC assessment, such error is harmless because the ALJ provided substantial evidence throughout her opinion to support her conclusions, and "[p]rocedural perfection in administrative proceedings is not required." *Graves v. Colvin*, 837 F.3d 589, 593 (5th Cir. 2016) (internal quotation marks omitted).

6

In her RFC assessment, the ALJ found that plaintiff could do medium work, but, "[d]ue to [plaintiff's] mental impairments," identified "the following nonexertional limitations: carrying out simple tasks in 2-hour increments with 15-minute breaks in-between . . . and adapting to simple changes in a routine work setting." Op. 12. Despite plaintiff's assertion, those *are* limitations on plaintiff's concentration, task persistence, and pace while plaintiff performs medium work. The ALJ did not merely identify plaintiff's mental impairments and then limit her to unskilled work, but provided specific guidance on how plaintiff can manage her concentration, task persistence, and pace limitations in the workplace. *Compare Sizemore v. Berryhill*, 878 F.3d 72, 80–81 (4th Cir. 2017) (remand not necessary where ALJ accommodated plaintiff's impairments by instructing that "he can never climb ropes, ladders, scaffolds[;] [must] avoid concentrated exposure to hazards and vibration[;] and can work only in [a] low stress [setting] defined as non-production jobs [without any] fast-paced work [and] with no public contact") (alternations in original) *with Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (remand necessary because "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work") (internal quotation marks omitted).[4] The fact that the ALJ raised these exact limitations during her hypothetical questions to Ms. Kopitzke further supports the Court's conclusion that these restrictions are limitations on plaintiff's concentration, task persistence, and pace in a work setting. *See Winschel v. Comm'r Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (noting that "hypothetical questions adequately account for a

---

[4] Other courts have similarly found that the restrictions the ALJ identified here are limitations on concentration, task persistence, and pace. *See, e.g., Hicklin-Jones v. Colvin*, Civ. Action No. 3:14-CV-584, 2015 WL 8958542, at *4 (W.D.N.C. Dec. 15, 2015) (finding the ALJ's limitation of "work[ing] for two hours segments with ten to fifteen minute breaks" and "perform[ing] simple, routine, repetitive tasks and some more complex tasks in a low stress environment" was "directly responsive to [plaintiff's] allegations regarding her ability to stay on task"); *Neyer v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-14-3343, 2015 WL 5773239, at *2 (D. Md. Sept. 29, 2015) ("I find that the ALJ adequately accounted for [plaintiff's] moderate limitation in concentration, persistence, or pace by limiting her to performing simple tasks in two-hour increments. By limiting the sustained duration of [plaintiff's] work to two hours, the ALJ adequately accounted for her limited ability to stay on task.").

claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations"). Thus, the ALJ included limitations on plaintiff's concentration, task persistence, and pace in her RFC assessment.

*****

In sum, the ALJ applied the correct legal standards in assessing plaintiff's RFC and supported her findings with substantial evidence in the record.

### IV.   CONCLUSION

Based on the foregoing, the Court will **DENY** plaintiff Shauna Brown's Motion for Judgment of Reversal and **GRANT** defendant Andrew M. Saul's Motion for Judgment of Affirmance. A separate Order accompanies this Memorandum Opinion.

Date: September 23, 2020

_____
Royce C. Lamberth
United States District Judge